64 So.2d 37 (1953)
MERMELSTEIN
v.
SCHWAB.
No. 20012.
Court of Appeal of Louisiana, Orleans.
April 8, 1953.
Harry R. Cabral, William M. Campbell, Jr. and Harry R. Cabral, Jr., New Orleans, for plaintiff and appellant.
Fishman, Reuter, Rosenson & D'Aquin, New Orleans, for defendant and appellee.
McBRIDE, Judge.
This suit is based on a written document reading as follows:
"This contract is only a tentative contract to be drawn upMr. Mermelstein's atty.
"Sam Mermelstein this date, May 23-51 entered into an agreement with myself Wallace J. Schwab to operate boat 35' known as the Sandra to be operated on a Rental Basis to ____ Oil Co. Sam Mermelstein is to receive 1/3 of the net income per month the upkeep and repairs to be paid by Schwabalso repairs that are presently being done are to be paid by Mr. W. J. Schwab.
*38 "It is also agreed that any future date within 1 year during its working period that Mr. Schwab has the option to purchase boat known as the Sandra for the sum of $1800.00 option for 1 year.
 "S. Mermelstein,
 W. J. Schwab"
The action is brought by Sam Mermelstein, who seeks to recover from Wallace J. Schwab the sum of $700. The petition recites in substance that plaintiff's attorney prepared the formal written contract contemplated by the parties when the tentative agreement was entered into, but that Schwab "rejected both this written contract, as well as the oral contract which he had with Mr. Mermelstein by having his attorney inform your petitioner's attorney that the deal was off."
These allegations then follow:
"4. That under the terms of the contract, Mr. Schwab was to pay for the repairs to the boat `Sandra' which were started at the time of the making of the oral contract. Upon the completion of the said repairs, Mr. Schwab refused to pay for the work done.
"5. That as a result of the refusal of Mr. Schwab to pay for the repairs, Mr. Mermelstein being unable to pay for said repairs, was forced to sell the boat to Mr. Carl W. Handlin on June 1, 1951, at a actual loss to petitioner in the sum of Seven Hundred Dollars ($700.00), which is the difference between the sale price of Eleven Hundred Dollars ($1100.00), and the option to buy price offered to Mr. Schwab of Eighteen Hundred Dollars ($1800.00) as per agreement between he and petitioner.
"6. Petitioner further avers that he was ready, willing and able to carry out his part of the agreement between he and the defendant, and he has made amicable demand upon the defendant herein, but without avail."
Defendant filed exceptions of no right of action and no cause of action which were sustained by the judge below, and plaintiff has perfected this appeal.
We think that the exception of no cause of action was properly sustained. According to the allegations of the petition the plaintiff adopts as the formula for measuring his damages the difference between the price for which he sold the boat and the amount of $1,800 for which defendant could have purchased the boat under the option. Even if the actual value of the boat can be said to have been $1,800, the difference between that figure and the amount for which Mermelstein sold the boat certainly cannot serve as the basis for assessing damages against Schwab.
In oral argument appellant's counsel alternatively contend that under the prayer for equitable and general relief the allegations of the petition set forth a cause of action as to the amount of the repairs which defendant failed and refused to pay. In our opinion the allegations would not warrant a judgment for the cost of the repairs because, in the first place, the petition does not set forth at whose instance the work was done, the amount thereof, or any of the details connected with the job. In the second place, Mermelstein was the beneficiary to the extent of the amount of the repairs as it must be concluded that the value of the boat was enhanced and that the sale price was greater than it would have been without the repairs.
Aside from the above there are other circumstances appearing from the petition which support the judgment sustaining the exception.
The settled jurisprudence of this State is that an agreement between parties, where their minds have met upon all essentials, constitutes a contract between them and binds them at once although they may have agreed that they would thereafter execute a formal instrument containing the terms of their present agreement. De Soto Building Co. v. Kohnstamm, Orleans No. 7627; Dauterive v. West India Transportation Corporation, 3 La.App. 319.
This being so it may be that the tentative agreement declared upon in the petition would have the force and sanctity of *39 a valid contract between the parties until such time as the contemplated contract was prepared by Mermelstein's attorney and executed by the parties.
This formal contract is alluded to in Article 3 and is made a part of the petition "the same as if copied in extenso herein." It bears the date May 24, 1951, which was the day following that on which the tentative agreement had been reached by the parties.
Mermelstein alleges in paragraph 6 of the petition, which has hereinabove been quoted in full, that he was ready, willing, and able to carry out his part of the agreement between himself and the defendant. He intimates in the petition that the defendant without valid cause refused to sign the contract and that because of this the dealings between them came to an end. Our examination of the contract tendered to Schwab reveals that it differs in material respects from the tentative agreement, and we believe that Schwab was fully justified in rejecting it and in calling "the deal" off.
A comparison of the proposed contract with the tentative agreement shows that it contains provisions clearly not included in or contemplated by the prior agreement. For instance, (1) the formal contract contains the stipulation that should the boat remain idle and earn no income for a period of thirty consecutive days, then the contract shall become null and void and of no effect; there is no such stipulation in the tentative agreement. (2) The contract gives Mermelstein the right of cancellation, should the venture prove unprofitable, upon giving Schwab thirty days' notice; the tentative agreement contains no such stipulation, nor can it be deduced therefrom that such was ever the intention of the parties. We mention here that it would lie within the power of Mermelstein, by exercising the right of cancellation accorded by the formal contract, to capriciously put an end to the venture by claiming that his earnings were not sufficient, and thereby, by such design, deprive Schwab of substantial rights. (3) The formal contract provides that it is to remain in force and effect for a period of one year; the tentative contract neither limits nor restricts the agreement to a duration of one year. (4) The formal contract provides that insurance shall be carried on the boat in favor of Mermelstein, and that all insurance premiums, as well as all taxes, are to be paid by Schwab; the tentative agreement contains no such nor similar provisions.
It strikes us that the plaintiff by insisting on the formal contract breached the tentative agreement which had existence for only a day. It is not to be denied that where parties make a preliminary agreement which deals with the subject matter in a general way and provides that essential details shall be elaborated in and defined by a later instrument, they are bound to what is expressly said in the preliminary contract and also to what is to be included in the formal document by a reasonable implication. However, neither party is bound to give assent in the formal instrument to anything to which he has not already consented, either expressly or by implication, in the preliminary agreement.
Mermelstein, through the contract, attempted to impose more onerous terms upon Schwab than were stipulated in the tentative agreement or which were reasonably within the contemplation of the parties. Therefore, it was Mermelstein who was in default on his undertaking in a material particular, and he cannot be successful in such a suit as he now brings against Schwab. To allow him to recover would be tantamount to condoning his taking advantage of his own breach of the contract. The law does not sanction this.
See Roig v. Electrical Research Products, 1 Cir., 57 F.2d 639; Allison v. Brown, 148 La. 530, 87 So. 262; Dauterive v. West India Transportation Corporation, supra; McLemore v. Hemler, 4 La.App. 388.
For the above assigned reasons, the judgment appealed from is affirmed.
Affirmed.